895 P.2d 1223

**Donald S. CATES, and S.B. Enterprises, Inc., an Idaho Corporation, Plaintiffs–Appellants,**

v.

**ALBERTSON'S INC., an Idaho Corporation, Defendant– Respondent.**

No. 20809.

Supreme Court of Idaho, Boise, December 1994 Term.

May 26, 1995.

William H. Ball, Boise, for appellants.

Brady, Lerma, Ctd, Boise, for respondent. John J. Lerma argued.

McDEVITT, Chief Justice.

## I.

### BACKGROUND AND PROCEDURE

Donald S. Cates (Cates) filed a complaint against Albertson's, Inc. (Albertson's) in dis-

trict court on August 11, 1992. In his complaint, Cates alleged that, while employed as a truck driver for S.B. Enterprises, Inc. (S.B.E.), Cates delivered a load of juices and jellies to the Albertson's warehouse in Roseville, California on January 22, 1991. While unloading his truck with a hand-operated pallet jack and a ramp supplied by Albertson's, Cates slipped and fell, sustaining back injuries.

Albertson's answered Cates' complaint and filed a motion for summary judgment. In its motion, Albertson's argued that there was no genuine issue of material fact as to whether Albertson's owed Cates a duty, the breach of which proximately caused Cates' injury. In support of its motion, Albertson's filed two affidavits from Stuart Gardner (Gardner), the warehouse operations manager for Albertson's Roseville, California warehouse. An exhibit to Gardner's affidavits established that the pallet jack Cates was using at the time of the accident was rated at a lifting capacity of 4,500 pounds. Gardner's second affidavit discussed Albertson's policy regarding the delivery of products into Albertson's Roseville, California warehouse.

The second affidavit, which included an appended copy of the policy, established that the responsibility for unloading products delivered to the warehouse rests with the driver of the truck making the delivery. Albertson's personnel are not allowed to assist in unloading deliveries made by non-Albertson's trucks. The policy also directs that drivers will not be allowed to use Albertson's power equipment to unload deliveries. Albertson's policy provides that Albertson's will supply drivers with a manual pallet jack to unload the delivery. If the driver wishes to hire "lumpers," people who will help the driver unload the truck, the policy directs that the responsibility of finding and hiring lumpers rests with the driver.

Albertson's also submitted an extract from Cates' deposition in support of its motion. In his deposition testimony, Cates stated that the ramp supplied by Albertson's was not defective, and that the ramp did not cause him to slip and fall.

In opposition to Albertson's motion, Cates filed an affidavit in which Cates affied that, although some of the pallets Cates was to unload weighed approximately 3600 pounds, the jack Cates was given had a sticker on it indicating that the jack was rated to lift only 2000 pounds. Cates also submitted the affidavits of Sharon Chadwick (Chadwick) and Joe Ince (Ince). Chadwick and Ince are both truck drivers who also affied that Albertson's does not unload or assist in unloading deliveries, and that this policy is not the custom in the industry. Chadwick and Ince further affied that other companies generally assist drivers in unloading deliveries.

Cates also submitted an affidavit from William H. Ball (Ball), Cates' attorney. The Ball affidavit contained exhibits that "were obtained through a compromise regarding a subpoena and to the best of my knowledge and belief are records kept by Market Transport/United Express in the normal course of business." The records contained in the exhibits were reports of workers' compensation claims for injuries suffered by drivers for Market Transport/United Express at Albertson's warehouses.

After oral argument, the district court granted Albertson's motion from the bench. The district court held that Albertson's breached no duty it owed to Cates. The district court stated:

> There's no indication at all that the pallet jack failed in any way. [That t]he pallet jack did not do exactly what it was supposed to do as a pallet jack. The clear indication is that this was a brand—well relatively new, I gather, facility down there. Mr. Cates indicated that it was well constructed and there was nothing wrong, and that he had no complaints with the way the dock was arranged, or with the general loading and unloading facilities, or with the ramp.

> He acknowledged it was a diamond rimmed ramp. That it functioned properly and they were in the right position. There's just no indication that any of the parts that were provided by Albertson's

failed, or operated improperly, or were defective, or were not adequate or failed to do what they were submitted to do.

Tr. pp. 66–67. The district court also rejected Cates' arguments that federal regulations or the Uniform Commercial Code (UCC) create a duty on the part of Albertson's to unload deliveries to its warehouses. The district court entered an amended judgment against Cates on August 11, 1993.[1]

## II.

### STANDARD OF REVIEW

■ The district court is to enter summary judgment when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). When faced with an appeal from a summary judgment, this Court employs the standard of review applied by the trial court when originally ruling on the motion, liberally construing the record in the light most favorable to the party opposing the motion. *Farm Credit Bank of Spokane v. Stevenson,* 125 Idaho 270, 272, 869 P.2d 1365, 1367 (1994); *East Lizard Butte Water Corp. v. Howell,* 122 Idaho 679, 681, 837 P.2d 805, 807 (1992). The motion must be denied if reasonable people could reach differing conclusions or draw conflicting inferences from the record. *Stevenson,* 125 Idaho at 272, 869 P.2d at 1367. If the record presents no genuine issues of material fact, however, the motion must be granted. *Id.* (citing *Olsen v. J.A. Freeman Co.,* 117 Idaho 706, 720, 791 P.2d 1285, 1299 (1990)).

■ In order to create a genuine issue of material fact, the party opposing the mo-

tion must present more than a conclusory assertion that an issue of fact exists. *Van Velson Corp. v. Westwood Mall Assocs.,* 126 Idaho 401, 406, 884 P.2d 414, 419 (1994). Rather, "the plaintiff must respond to the summary judgment motion with specific facts showing there is a genuine issue for trial." *Tuttle v. Sudenga Indus., Inc.,* 125 Idaho 145, 150, 868 P.2d 473, 478 (1994). Bare assertions that an issue of fact exists, in the face of particular facts alleged by the movant, are not sufficient to create a genuine issue of fact. *Stevenson,* 125 Idaho at 274, 869 P.2d at 1369; *see also* I.R.C.P. 56(e) (The nonmovant's response "must set forth specific facts showing that there is a genuine issue for trial.")

## III.

### THE BALL, INCE, AND CHADWICK AFFIDAVITS WILL NOT BE CONSIDERED IN OPPOSITION TO ALBERTSON'S MOTION

■ As a preliminary matter, this Court must determine whether the Ball, Ince, and Chadwick affidavits can properly be considered in opposition to Albertson's motion. Albertson's moved to strike the affidavits on the grounds that they do not meet the requirements for admissibility set out in I.R.C.P. 56(e). Rule 56(e) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." When reviewing a trial court's ruling on a summary judgment motion, this Court will consider only proof that complies with Rule 56(e), being based upon personal knowledge and containing material that would be admissible at trial. *Harris v.*

---

1.  S.B.E. also brought suit against Albertson's, seeking reimbursement for economic damages sustained as a result of Cates being unemployable for a twelve week period following the accident. The district court granted summary judgment against S.B.E. on the grounds that, even if Albertson's was legally responsible for Cates' injuries, S.B.E. could not recover purely economic

damages through a cause of action in tort. Although S.B.E. was included in the notice of appeal from the district court's decision, S.B.E. did not file an appellant's brief, and no issues in Cates' brief discuss the summary judgment against S.B.E. Albertson's filed a motion to dismiss S.B.E.'s appeal. That motion is hereby granted.

**1034**

*State Dep't of Health & Welfare,* 123 Idaho 295, 298, 847 P.2d 1156, 1159 (1992).

■ Ball's affidavit is not based upon personal knowledge as required by Rule 56(e). The only evidence offered through the Ball affidavit is worker's compensation records from Market Transport/United Express attached as exhibits to the affidavit. Nothing in Ball's affidavit establishes that Ball has any personal knowledge of either the accidents discussed in the records or the preparation and maintenance of the records themselves. Because the affidavit fails to establish that Ball is competent to testify as to the matters contained therein, this Court will not consider the contents of the affidavit in opposition to Albertson's affidavit.

■ Cates argues that, because nothing in the record indicates that the records are not accurate and kept in the ordinary course of business, the exhibits to Ball's affidavit are admissible under the business records exception to the hearsay rule. This contention misstates the requirements of I.R.C.P. 56(e). It is Cates' burden to affirmatively show that Ball is competent to testify to the matters contained in the affidavit and that the affidavit is based on Ball's personal knowledge. Because the Ball affidavit fails to affirmatively establish that Ball has personal knowledge of the contents of the records offered through that affidavit or that the affidavit sets forth facts that would be admissible at trial, the contents of and exhibits to that affidavit will not be considered in opposition to the motion for summary judgment.

Similarly, the Ince and Chadwick affidavits state that several other companies, which are not parties to this appeal, unload shipments that arrive at those companies' warehouses. Neither the Ince nor Chadwick affidavit affirmatively establishes that the affiant has personal knowledge of the corporate policies discussed in the affidavits. Those statements in the Chadwick and Ince affidavits will therefore also be disregarded when reviewing the order granting summary judgment.

## IV.

### ALBERTSON'S DID NOT BREACH A GENERAL DUTY OF CARE TO CATES

■ Cates was a business invitee on land owned and occupied by Albertson's. As the owner/occupier of that land, Albertson's owed Cates a duty of ordinary care. *See Harrison v. Taylor,* 115 Idaho 588, 595, 768 P.2d 1321, 1328 (1989) ("Henceforward, owners and occupiers of land will be under a duty of ordinary care under the circumstances towards invitees who come upon their premises."). Cates contends that Albertson's either breached this general duty of care by supplying Cates with dangerously defective equipment or that Albertson's had a specific duty to unload Cates truck under state or federal law. The question presented by Cates' first contention therefore turns on whether the record presents a genuine issue of fact as to whether Albertson's breached a general duty of care to Cates.

■ Cates admitted in his deposition testimony that the ramp supplied by Albertson's was not defective. In opposition to the motion for summary judgment, Cates relies on evidence submitted through affidavit that the pallet jack supplied by Albertson's had a sticker on it indicating that the jack was rated to lift 2,000 pounds, substantially less than Cates was carrying when he fell. Cates argues that this evidence is sufficient to create a genuine issue of material fact as to whether Albertson's breached a general duty of care to Cates. We disagree.

The Gardner affidavit submitted in support of Albertson's motion contained the technical specifications for the pallet jack Albertson's supplied Cates. According to those technical specifications, the jack was capable of lifting 4,500 pounds. Although Cates affied that the jack has a sticker on it indicating that the jack is not intended to lift more than 2,000 pounds, Cates' affidavit neither establishes that the jack was incapable of lifting the pallet Cates was carrying when he fell or that the jack failed in any way. Cates' affi-

davit fails to controvert the specific facts alleged in the Gardner affidavit establishing that the jack was capable of lifting 4,500. *Stevenson,* 125 Idaho at 274, 869 P.2d at 1369 ("These assertions, in the face of the particular facts alleged by the [movant], are not sufficient to create a genuine issue of material fact.").

Cates has presented no evidence to establish that the pallet jack was defective in any way, that the pallet jack malfunctioned at the time Cates fell, or that the pallet jack contributed to Cates' accident. The record does not present a genuine issue of fact as to whether Albertson's breached a general duty of care to Cates. Accordingly, summary judgment was proper regarding Albertson's alleged breach of the duty of care.

## V.

## ALBERTSON'S OWED CATES NO DUTY UNDER FEDERAL LAW

■ Cates argues that the Motor Carrier Act of 1980 creates a duty on the part of Albertson's to unload Cates' truck. 49 U.S.C. §§ 11101–11111. Specifically, Cates argues that the provision of that statute relating to loading and unloading motor vehicles prohibits requiring truckers to unload goods upon delivery. The language relied upon by Cates provides:

> Whenever a shipper or receiver of property requires that any person who owns or operates a motor vehicle transporting property in interstate commerce ... be assisted in the loading or unloading of such vehicle, the shipper or receiver shall be responsible for providing such assistance or shall compensate the owner or operator for all costs associated with securing and compensating the person or persons providing such assistance.

49 U.S.C. § 11109(a).

This statute is facially inapplicable to the situation presented in this case. Albertson's did not require that Cates be assisted in

unloading the truck. Also, Cates did not hire anyone to assist in unloading the truck. The statute does not address the situation presented by this case, and does not require that Albertson's unload Cates' truck as Cates asserts.

■ Moreover, the legislative history of this section of the Motor Carrier Act establishes that the statute was not intended to establish safety standards. The House Report of the Public Works and Transportation Committee states that the statute was enacted to address the economic hardship "that some motor carriers and owner-operators have had with being coerced by so-called 'lumpers' into paying to have their trucks loaded and unloaded." H.R.Rep. No. 1069, 96th Cong., 2d Sess. 30–33, *reprinted in* 1980 U.S.Code Cong. & Admin.News 2283, 2312–2315. In order for a statute to create a tort duty, the breach of which constitutes negligence as a matter of law, "the statute or regulation must have been intended to prevent the type of harm defendant's act or omission caused[.]" *Sanchez v. Galey,* 112 Idaho 609, 617, 733 P.2d 1234, 1240 (1986). The harm that 49 U.S.C. § 11109(a) seeks to prevent is economic hardship on the part of motor carriers, not personal injuries that occur when motor carriers suffer accidents while unloading their trucks. The trial court therefore did not err by concluding that Albertson's owed Cates no duty under this federal statute.

## VI.

## ALBERTSON'S OWED CATES NO DUTY UNDER THE UCC

■ Cates asserts that Albertson's owed Cates a duty under the contract for the sale of goods between Albertson's and Welch's. We disagree. Because Cates was neither a party to nor an intended beneficiary of the contract between Albertson's and Welch's, Cates has no enforceable rights under that contract. *Vickers v. Hanover Constr. Co.,* 125 Idaho 832, 834–35, 875 P.2d 929, 931–32 (1994). Even if Albertson's owed

Cates a contractual duty, the breach of that duty would not give rise to a cause of action in tort. *Id.; Steiner Corp. v. American Dist. Telegraph,* 106 Idaho 787, 790, 683 P.2d 435, 438 (1984).

## VII.

## CONCLUSION

The trial court's order granting Albertson's motion for summary judgment is affirmed. Costs to respondent. No attorney fees awarded on appeal.

TROUT and SILAK, JJ., and YOUNG, J. Pro Tem., concur.

JOHNSON, J., concurring and dissenting.

I concur in all of the Court's opinion, except that I respectfully dissent from part IV (Albertson's Did Not Breach a General Duty of Care to Cates). In my view, summary judgment should not have been granted on this issue because there is a genuine issue of material fact whether Albertson's breached the duty of care.