918 P.2d 266

Ann **STANSBURY**, Plaintiff–Appellant,

v.

**BLUE CROSS OF IDAHO HEALTH SERVICE, INC.**, Defendant–Respondent.

No. 22108.

Supreme Court of Idaho,
Boise, March 1996 Term.

June 7, 1996.

Jim Jones & Associates, Boise, for appellant. Jim Jones argued.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondent. Richard C. Fields argued.

SILAK, Justice.

Appellant Ann Stansbury (Stansbury) sought relief under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, and the Idaho Human Rights Act (IHRA), I.C. § 67–5901, *et seq.* The district court entered summary judgment for respondent Blue Cross of Idaho Health Service, Inc. (Blue Cross), finding that Stansbury had failed to prove that, with or without reasonable accommodations for her disabilities, she was qualified for the employment position she held. We vacate and remand.

## I.

## FACTS AND PROCEDURAL BACKGROUND

Prior to July 8, 1991, Stansbury worked for Blue Cross of Oregon as a customer service representative. Stansbury interviewed with Blue Cross for a similar position, but was informed that no such positions were available. Instead Blue Cross offered Stansbury a position as a claims analyst. Stansbury accepted the position with an understanding that she could later apply for a transfer to customer service.

Blue Cross had in place performance goals which it expected its employees to meet. Blue Cross used gradually escalating goals over a nine month period to raise its new employees' abilities to the level expected of fully trained claims examiners. One performance goal required the ability to process claims at a rate of at least 85% of the performance standards, with no more than a 3% payment error rate and no more than a 6% coding error rate. At the completion of her three month probationary period, Stansbury received a production rating of 50%, with a 1.6% payment error rate and a 6% coding error rate. Stansbury's supervisor informed her that she was "performing above what is expected" and she was given an overall performance rating of 96%.

Shortly thereafter, Stansbury began to experience back and right arm and shoulder pains. In a discussion with her supervisor, Stansbury noted a similar experience at Blue Cross of Oregon. She stated that her previous employer had successfully alleviated her pains by providing her with an adjustable work-station designed by an ergonomist. Blue Cross took no action.

After her probationary period, Stansbury became increasingly unable to meet the escalating production goals. At the conclusion of her nine month training period, Stansbury was processing claims at a rate of 47% of the performance standards, with a 4% payment error rate and a 5% coding error rate. Nonetheless, she received an overall performance rating of 86%. Her supervisor noted that Stansbury tended to be easily distracted and inattentive. Her next evaluation noted a small improvement to a 55% production rating, with a 2.6% payment error rate and a 1% coding error rate. She received an overall performance rating of 88%.

After working at Blue Cross for over a year, Stansbury requested a transfer to the customer service department. Blue Cross denied her request on the basis that new performance standards required an employee seeking a transfer to have at least a 95% overall performance rating.

Since her production levels were still below expectations, Blue Cross instituted weekly meetings between Stansbury and her supervisor. Blue Cross hoped the weekly meetings would provide suggestions and continued training to help Stansbury raise her production ratings. Instead, Stansbury felt that no help was being given to her at these meetings, that they placed additional stress upon her, and that they caused her to experience severe depression. When Stansbury communicated the detrimental effect that she believed these meetings were having on her, they were moved from Fridays to Mondays. At these weekly meetings Stansbury repeatedly informed her supervisors that she was experiencing back and shoulder pains and requested an adjustable desk set up by an ergonomist.

In late 1992, Stansbury experienced intestinal problems which required surgery. She took medical leave and returned to work a month later. After her return, Blue Cross conducted another performance evaluation. Stansbury's production rating was 56%, with a payment error rate of 3.4% and coding

error rate of 1.2%, for an overall performance rating of 87%. As a result, Blue Cross placed Stansbury on a sixty day probation. She was informed that the failure to achieve the established production goals by the end of the probationary period would result in termination of her employment.

After being placed on probation, Stansbury received the adjustable desk she had requested. She informed her supervisors that her arm and shoulder felt better and her processing rate increased to 67%. Shortly thereafter Stansbury developed problems with her thumb which resulted in her production rate falling to 54%. Blue Cross refused her request for an ergonomist to help her set up her desk. Stansbury visited a hand specialist who diagnosed her with carpal tunnel syndrome and tendinitis, later determined to be radial tunnel syndrome. Stansbury informed her supervisors and filed a worker's compensation claim with the Idaho Industrial Commission. When the probationary period expired and Stansbury still had not met the established production goals, Blue Cross terminated her employment.

Stansbury filed suit in district court alleging disability discrimination under IHRA and ADA, as well as age discrimination under IHRA and the federal Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* Blue Cross moved for summary judgment.[1] In opposition, Stansbury submitted her own affidavit asserting that "I could have done the work for Blue Cross, if they had listened to me and provided the help I requested." Stansbury also submitted affidavits from her professional counselor and a consulting physician to the Department of Health and Welfare. These affidavits indicated that Stansbury was psychologically and physically disabled and that Blue Cross' failure to recognize and accommodate her impairments made it "difficult if not impossible to perform at the level expected at Blue Cross of Idaho."

The district court granted Blue Cross' motion for summary judgment finding that all of Stansbury's claims failed because she did not

prove that she was qualified to perform the essential functions of the position. In light of her consistent failure to meet the production goals set by Blue Cross, the district court concluded that Stansbury had failed to show that, with or without reasonable accommodation for her disabilities, she would have been able to process claims at a rate of 85%.

Stansbury appealed only as to her disability claims and did not raise on appeal her age discrimination claims.

## II.

## ISSUES ON APPEAL

1. Whether the district court erred in considering, analyzing, and deciding Stansbury's disability claim solely as a claim for intentional disability discrimination.

2. Whether the court erred in determining, as a matter of law, that Stansbury had not presented an adequate claim of intentional disability discrimination.

## III.

## STANDARD OF REVIEW

Stansbury appeals the district court's entry of summary judgment against her. In such a case, the Idaho Supreme Court employs the same standard as that used by the trial court when ruling on the motion. *Avila v. Wahlquist,* 126 Idaho 745, 747, 890 P.2d 331, 333 (1995). The Court construes the record in a light most favorable to the non-moving party and draws all reasonable inferences and conclusions in that party's favor. *Id.* If reasonable people could reach differing conclusions or draw conflicting inferences from the record the motion must be denied. *Cates v. Albertson's Inc.,* 126 Idaho 1030, 1033, 895 P.2d 1223, 1226 (1995). Summary judgment is only proper if, after reviewing the pleadings, depositions, admissions, and affidavits, there is no genuine issue of material fact and the

1. For purposes of its summary judgment motion below and on appeal, Blue Cross assumed that as a result of her physical disability, but not her alleged mental disability, Stansbury was "disabled" as defined under ADA.

moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c).

## IV.

## ANALYSIS

### A. A Genuine Issue Of Material Fact Exists As To Whether With Reasonable Accommodation For Her Disabilities Stansbury Could Have Performed The Essential Functions Of The Position.

■ ADA prohibits discrimination against a qualified individual with a disability. 42 U.S.C § 12112(a). Prohibited discrimination includes "not making reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability ..." 42 U.S.C. § 12112(b)(5)(A). Similarly, IHRA prohibits disability discrimination but "shall not apply if the particular disability, even with reasonable accommodation by the employer, prevents the performance of the work required by the employer in that job." I.C. § 67–5909. When this Court has not had occasion, as here, to determine the standards applicable to the adjudication of state claims patterned on federal law, this Court may look to that body of federal law for guidance. *See, Bowles v. Keating,* 100 Idaho 808, 811–12, 606 P.2d 458, 461–62 (1979).

■ For purposes of the summary judgment motion below and again on appeal, Blue Cross assumed Stansbury was "disabled" as defined under ADA. As a result, we must determine whether Stansbury has made a sufficient showing that she was a qualified individual with a disability to preclude summary judgment. A qualified individual with a disability is a disabled person "who, with or without reasonable accommodation, can perform the essential functions of the employment position...." 42 U.S.C § 12111(8). Deference is given to the employer's determination as to the essential functions of the position. *Id.; see also,* 29 C.F.R.App. to

Part 1630—Interpretative Guidance On Title I of the Americans With Disabilities Act, pg. 406. Blue Cross insists that the key-punch tasks, specifically the ability to process claims at 85% of the performance standards, was an essential function of Stansbury's position at Blue Cross.

The district court found that all of Stansbury's claims failed because she did not demonstrate that with reasonable accommodation she could have performed the essential functions of her job and processed claims at a rate of 85%. We disagree and find that Stansbury has raised a sufficient factual dispute to survive Blue Cross' motion for summary judgment. While at Blue Cross, Stansbury requested several possible accommodations which she believed would have enabled her to meet the 85% production goal. Her affidavit shows that Blue Cross ignored several of her requests, including (1) the provision of an ergonomist to analyze her work area and ensure that it was set up in a manner which would alleviate her back and shoulder pains, (2) a discontinuance of the weekly meetings, and (3) a transfer to a customer service position.[2]

In her affidavit, Stansbury asserts that "I could have done the work for Blue Cross, if they had listened to me and provided the help that I requested." This assertion is reinforced by the affidavit of Charles D. Steuart who found that "without recognition of [her] impairments and job structuring taking the impairments into account, she would not have been able to function adequately" at Blue Cross. The affidavit of the counselor Joetta Fulgenzi also states that without recognition of her chronic depression, Stansbury "would have found it difficult if not impossible to perform at the level expected by Blue Cross of Idaho."

Taking all of Stansbury's assertions to be true, we find that she has raised sufficient facts from which reasonable people could conclude that had Blue Cross provided the requested accommodations she would have

---

2. We note that all of these appear to be potential accommodations according to the Equal Employment Opportunity Commission's guidelines, "reasonable accommodation may include but is not limited to ... job restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices...." 29 C.F.R § 1630.2(*o*)(2)(ii).

been able to meet the production quotas. In light of this factual dispute, we vacate the district court's entry of summary judgment against her.

### B. The District Court Erred in Granting Summary Judgment on Stansbury's Intentional Discrimination Claim.

■ In addition to her claim for failure to make reasonable accommodation, Stansbury also alleged an intentional discrimination based on disability claim. Blue Cross insisted that it fired Stansbury for a purely non-discriminatory reason, *i.e.,* her failure to meet the production standards. Stansbury asserted this basis for termination was pretextual. However, the district court did not reach this issue as it found that Stansbury failed to demonstrate that she was qualified to do her job, an essential element of both disability claims.

■ Both IHRA and ADA prohibit the discharge of a qualified individual with a disability on the basis of that individual's disability. I.C. § 67-5909(1), 42 U.S.C. § 12112(a). In *Smith v. Barton,* 914 F.2d 1330 (9th Cir.1990), the Ninth Circuit noted that where a plaintiff alleges intentional disability discrimination and the defendant disavows any reliance on the disability in making the employment decision, the analytical framework of Title VII cases should be employed. *Id.* at 1339. To establish unlawful discrimination based on disability Stansbury must prove that she (1) was disabled within the meaning of the statute, (2) was qualified, that is, was able to perform the essential functions of the job, with or without reasonable accommodation, and (3) was discharged because of her disability. *See, e.g., Tyndall v. National Educ. Centers, Inc. of California,* 31 F.3d 209, 212 (4th Cir.1994); *White v. York Intern. Corp.,* 45 F.3d 357, 360–61 (10th Cir.1995).

For the purposes of summary judgment, Blue Cross conceded that Stansbury was disabled within the meaning of the relevant statutes. The fact that Stansbury was discharged and replaced by a non-disabled person is also not in controversy. Because we conclude that a factual dispute exists as to whether Stansbury was qualified for the position, we vacate the grant of summary judgment on the intentional discrimination claim.

### V.

### CONCLUSION

IHRA and ADA seek to provide qualified disabled individuals with the same employment opportunities that are available to persons without disabilities. To that end, an employer is required to provide reasonable accommodations to a disabled employee which would enable that employee to perform the essential functions of his or her position. Stansbury has raised a sufficient factual issue concerning whether she could have met the 85% production rating had Blue Cross provided her with the accommodations she requested.

Because we find that Stansbury has raised a sufficient factual dispute concerning whether she was qualified for the position at Blue Cross, we vacate the district court's entry of summary judgment, and remand for further proceedings consistent with this opinion.

Costs on appeal to Stansbury.

McDEVITT, C.J., and JOHNSON and TROUT, JJ., concur.

SCHROEDER, Justice dissenting.

The district court found that Stansbury's claims failed because she did not demonstrate that with reasonable accommodation she could have performed the essential functions of her job and processed claims at a rate of 85 percent. This Court reverses the district court's decision, citing several bases.

First, Stansbury asserts that Blue Cross ignored her request to provide an ergonomist to analyze her work area and ensure that it was set up in a manner which would alleviate her back and shoulder pains. Under the circumstances of this case that is a bare assertion that should be given no weight. In fact, Blue Cross had provided an ergonomist for Stansbury when she was employed in Oregon. Any accommodation that might have been made was within her knowledge, but she failed to set forth any facts establishing what such an accommodation might be. If a reasonable accommodation were possible, Stansbury knew what it was and should have told the district court, rather than sim-

ply making a conclusory assertion that an ergonomist should have been provided.

The second ground upon which the Court relies is the failure of Blue Cross to discontinue weekly meetings with Stansbury. The record does establish that Blue Cross had changed the date of the weekly meetings to accommodate Stansbury's concerns. In essence Stansbury says that she should not have been supervised. This Court should not impose such a burden upon an employer.

The third basis for the Court's decision is that Blue Cross failed to transfer Stansbury to a customer service position. That would not be an accommodation. That would be a requirement that an employer hire a person for a job different from what that person was initially hired to do.

The affidavits of the doctor and the counselor that are cited provide no basis to determine what reasonable accommodations could have been made. The assertions in these affidavits are simply too vague to provide guidance as to what Blue Cross failed to do that it could have done.

The district court correctly analyzed the issue as follows:

> The ability to process claims at a rate of at least 85% of her performance standard was an essential function of Ann Stansbury's job. *See Bolton v. Scrivner, Inc.,* 836 F.Supp. 783, 788 n. 4 (W.D.Okla.1993) (ADA does not require an employer to modify the actual duties of a job in order to accommodate an individual who is not physically capable of performing those duties). Unfortunately, the plaintiff was not able to meet the performance standard required for her job.
>
> The law also requires employers to make reasonable accommodations so that an employee with a disability can perform the essential functions of her position. Unfortunately, there is no evidence that, other than requiring her employer to lower its performance standards—which is not required, the plaintiff would have been able to perform the essential functions of her position even with reasonable accommodation by Blue Cross. The plaintiff has failed to show that with a reasonable accommodation she was qualified to do her job, an essential element of her disability

discrimination claim. *C.f., Lutter v. Fowler,* 1 A.D. Cases 861, 864, 1986 WL 13138 (D.D.C.1986) (granting summary judgment in favor of employer in Rehabilitation Act case where, assuming that employee in fact had a mental handicap, employee had failed to present any evidence that he would have been able to perform the essential functions of his job with a reasonable accommodation).

The plaintiff has failed to establish that, with or without reasonable accommodation, she was qualified to do her job, an element essential to her disability discrimination claim on which she would bear the burden of proof at trial. Because this is a key element, the claim fails.

Conclusory and speculative assertions should not be sufficient to deny a motion for summary judgment that has been supported by specific allegations of fact. There is no showing of facts by Stansbury of what a reasonable accommodation would have been that would have allowed her to perform the job she was hired to do. The district court decision should be affirmed.